UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

15CV 9575

_____

JOSE QUEZADA,

                        Plaintiff,

         -versus-

ADA PEREZ, Superintendent of Downstate
Correctional Facility; AZZINARO, Correctional
Sergeant; SHANNAN A. SMITH, Psychologist #1;
B. LORDO, Correctional officer; K.Watson,
IGP Supervisor; LASHEY, Correctional officer;
DINARDO, Psychologist; LOPEZ, Correctional
officer; RODRIGUEZ, Correctional Officer;
SCHMITT, Correctional officer; J. DEACON,
Correctional officer; JOHN DOE #1, Draft
Supervisor Sergeant; JOHN DOE #2,Draft
supervisor sergeant; JOHN DOE #3 Correctional
officer; JOHN DOE #4, Food administrator
supervisor; JANE DOE #5, Mental Health Unit
Chiief; JANE DOE #6, Correctional officer.

                      Defendants.

_____

_____CV_____(   )(   )

**VERIFIED PETITION**
**JURY TRIAL DEMANDED**

## I. INTRODUCTION:

1.   This is a civil action pursuant to 42 U.S.C. §1983, filed by
pro se plaintiff Jose Quezada, a state and Federal Offender, alleging
several violations of his constitutional rights. He alleged that his right
to received mental health and medical treatment while in extreme isolation
and solitary confinement (SHU); use excessive force; harassed him; retaliated
against him for filing grievances and complaint; denied him Reasonable
Accommodation for his disabilities in violation of American with Disabilities
Act (ADA), and Rehabilitation Act (RA); Deliberate indifference to his mental
and medical needs; denied supplies to do his legal work; denied him his
religious meal in retaliation for filing grievances; denied shower and his
First, Eighth, and Fourteenth Amendment Right.

## II. <u>JURISDICTION</u>

2.     Jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331 in that this is a Civil Action arising under the CConstitution of the United States.

3.     Jurisdiction of the court is invoked pursuant to 28 U.S.C.§1343 (a)(3), in that this action seeks to redress the deprivation, under color of state law, of rights secured by acts of congress providing for Equal Rights of person within the jurisdiction of the United States.

## III. <u>PARTIES IN THIS COMPLAINT</u>

### A. Plaintiff:

4.     Plaintiff Jose Quezada is a 47 years of age, spanish speaking from Dominican Republic, married with three childrens,practicing the Judaism, and currently incarcerated at Five Points Correctional Facility, Plaintiff was sentenced to 7 to 21 years for Manslaughter First Degree, Because the defendants violations against the plaintiff while he was at Green Haven Correctional Facility ("Green Haven"), in which he was falsely accused of assaulting one of the defendants, he was confined to the extreme isolation "Special Housing Unit" "SHU" in different facilities, and transferred to Downstate Correctional Facility numerous times for his Family court appearance, and was housed in Downstate C.F. Special Housing Unit "SHU". He served a total of Approximately <u>"1,315"</u> consecutives days in extreme isolation. His early release from prison is in 2016, when release the plaintiff intent to return to his home Country (Dominican Republic), or New York City area to live with his wife and childrens.

### B. Defendants:

5.     Defendant ADA PEREZ, was the Superintendent of Downstate Correctional Facility. Superintendent Perez had policy-makin and super-

visory authority with regard to Downstate, and authorized and continued the unconstitutional violations against plainiff, including the denial of mental health treatment while at Downstate in the extreme isolation. Was acting under color of state law, and is being sued in her individual and official capacity for monetary relief, and Federal Injunction.

6.    Defendant SHANNA A. SMITH, at all times relevant was the mental health Psychologist No. 1, at Downstate Correctional Facility. Defendant Smith was authorized to conduct mental health round in extreme isolation, "special Housing Unit" "SHU", and provide mental health care to other offenders, in the SHU, the plaintiff in particular. Defendant Smith, denied mental health care to plaintiff while in "SHU, and as result plaintiff attempted to committed **"suicide"** by swollowed a **"Razor Blade"**. Smith was acting under color of state law, and is being sued in her indivisual capacity.

7.    Defendant K. WATSON, at all time relevant was the Inmate Grievance Program Supervisor, "IGP" at Downstate Correctional Facility. Defendant Watson, was authorized to conduct round in the special housing unit "SHU" she denied plaintiff access to the grievance programs, in retaliation for filing grievance and complaints against her with the superintendent, was acting under color of state law, and is beind sued in her individual capacity.

8. Defendant B. LORDO, at all times relevant, was a Correctional Officer at Downstate Correctional Facility, Employee by the DOCCS and was assigned at the Special Housing Unit (SHU) On november 12, 2013 when she ordered John Doe officer to pack plaintiff's property, was acting under color of state law, and is being sued in her individual capacity.

9.     Defendant RODRIGUEZ, at all times relevant was a Correctional Officer at Downstate Correctional Facility on November 7, 2015. He was assigned  to escorted inmates from draft room to the special housing unt SHU. He escorted plaintiff to SHU. He also was assigned to escorted the mental health medication nurse to the special housing unit "SHU" during the medication round approximately 8:00p.m. was acting under color of state law, and is being sued in his individual capacity.

10.     Defendant, AZZINARO, at all times relevant, was a Correctional Sergeant at Downstate Correctional Facility. Azzinaro was assigned to escorted inmates, the plaintiff in particular to the special housing unit "SHU", from the draft room, and was the SHU supervisor, was acting under color of state law, and is being sued in his individual and official capacity.

11.     Defendant, DINARDO, at all times relevant, was a Mental Health Psychologist, at Downstate Correctional Facility. Mrs Dinardo was assigned to provide mental health care andtreatment to inmates in the special housing unit "SHU" the plaintiff in particular. She work on 7 /11 /14 , she retaliate against the plaintiff for filing grievances and complaints, was acting under color of states law, and being sued in her individual capacity.

12.     Defendant, LASHEY, at all times relevant was a Correctional Officer at Downstate Correctional Facility. Lashey was assigned to the special housing unit "SHU", was acting under color of state law, and being sued in his individual capacity.

13.     Defendant JOHN DOE NO.1, at all times relevant was a Correctional Sergeant at Downstate Correctional Facility. He was assigned to the draft room supervisor on 10/23/14 , was acting under color of state law and is being sued in his individual and official capacity.

14.     Defendant JOHN DOE NO.2, at all times relevant was a Correctional Sergeant at Downstate Correctional Facility, he was assigned to the draft room on 11/14/13, was acting under color of state law, and being sued in his individual capacity.          **(4)**

15.     Defendant JOHN DOE #3 , at all times relevant was a Correctional
Officer at Downstate Correctional Facility. He was assigned to the "SHU" on
11/12/13, and was who packed and/or destroyed plaintiff;s legal papers, was
acting under state law, and is being sued in his individual capacity.

16.     Defendant JOHN DOE #4 at all times relevant was a civiliam Food
Administrator & Supervisor, he/her was assigned to the Mess Hall, was acting
under color of state law and is being sued in his/her individual capacity.

17.     Defendant JANE DOE #5,at all times relevant was the Mental Health
Unit Chief. She authorize other mental health staff to denied plaintiff's
mental health care and treatment, even though she knew that this practice
has been long to cause plaintiff's a risk of severe psychological and
physical harm, suffering, psychological trauma, and physical harm including
suicide, self harm and death. She interview plaintiff on 12/13/13, after he
was discharge from the hos pital and suicide attempt, was acting under color
of state law and is being sued in her individual capacity.

18.     Defendant J. DEACON, at all times relevant was acorrectional
officer, he was assigned to D-Block on 12/8/13 as (A-Officer), while
plaintiff was in suicide watch, was acting under color of state law and is
being sued in his individual capacity.

19.     Defendant SCHMITT, at all times relevant was a correctional
Officer, and was assigned to D-Block on 12/8/13 to be stationed outside
plaintiff's cell while plaintiff was in suicide watch. Schmitt, monitored
and documented in the "Suicide watch log books" plaintiff's activities
while in suicide watch, was acting under color of state law and is being
sued in his individual capacity.

20.     Defendant Jane Doe, Correctional Officer, was assigned to escorted
plaintiff from the draft room with Defendant "Rodriguez" on 11/7/13, and
was in plaintiff's cell while rodriguez physically abuse plaintiff in his

cell. Jane Doe #6 in conjunction with Rodriguez abused, and threatened the plaintiff to destroyed his legal papers if he filed any grievance, she also failed to intervened when saw Rodriguez  violating plaintiff's rights.

## V. STATEMENT OF FACT:

21.    On November 4, 2013, plaintiff was transferred to Downstate C.F. due to an Court Order to Produced him in Brooklyn Supreme Court for a trial scheduled to November 7, 2013 at 10:00 a.m. and continuing until 11/15/13, 12/11/13, and 12/13/13. See Exhibit (A) Court Order to Produce.

22.    Upon plaintiff arrival at Downstate C.F. the Defendants violated plaintiff's constitutional rights via deliberately denying him access to his property, the court and Reasonable Accommodation for his disabilities. He was processed and his property searched by Defendant Lopez, which was one draft bag containing only legal documents and the cosmetic he allowed to take, such as shower shoes, deodorant and clean underwear, including his papers for the family court trial and other actives cases in which plaintiff have court deadline to submitted motions. See Exhibit (B) Court Papers. Plaintiff also has a criminal case pending in court which he has to submitted other exhibits and motions.(People V. Quezada DKT NO. 9692/96             . and other civil case in brooklyn Supreme court that he has trial upon finished the family court trial. After plaintiff was pat frisk and strip frisked, Defendant Lopez, ("Lopez") notice plaintiff's disabilities since he was walking with a cane, wearing leg brace, and this was not the first time Defendant frisked plaintiff and notice his disabilities, and plaintiff injuries were visible. Plaintiff told Defendant "Lopez" that dued to his disabilities he would like to have someone like the porter to help him to carry out his legal bag of property to the special housing unit ("SHU"), because due to his placement in the special housing unit, his hands were hand cuffed in front secured to his

body by a wrist chain, (require when transporting special housing unit inmates 7. N.Y.C.R.R. 305.3(b).

23.   Plaintiff also told defendant Lopez that he walked with a cane in one hand and he was carried his dinner bag in the other hand that is also secured closed to his body with the "black box" and handcuffs, and on top of that his legs given way when he walked . Also it was impossible to reach the handrail on the stairscase  to steady himself, if he made a misstep on the stairs.

24.   The Defendant Lopez refused to provide plaintiff wit Reasonable Accommodation by assigning one of the several porters to help plaintiff carry out the legal bag, instead, Defendant Lopez stated; "if you want your legal papers, you need to carry them yourself, nobody's going to carry for you, and if you don't carry the bag we are going to placed them in the shelf until you go back to your facility". Plaintiff asked Lopez for help by either assigning one of the porters to help him with the bag or at leats released one of hand, because the other hand he was holding his cane to walk, both of plaintiff's requests were denied. Defendant Lopez stated that his "job is to handcuffed plaintiff and placed the black box and chain around his waist. The defendant Azzinaro who was the escort supervisor was present at all time during plaintiff's request for reasonable accommodation under the American with Disabilities Act "ADA". Plaintiff filed a grievance DSR-19227-14, this grievance alsowas consolidate with another griecvance filed against the Inmate Record Coordinator "IRC". See Exhibit (C) Grievance DSR-19227-14.

25.   On November 7, 2013, plaintiff was escorted to the draft room for his Court Appearance to star his family court trial. Upon his arrival at the draft room, plaintiff asked for his Court bags containing his legal papers to be retrieved, for some legal documents and exhibits to be used in

the trial. The draft room officer informed plaintiff that he did not find the court bag, it took over a hour looking for the court bag, and when the officer found the bag plaintiff was only allowed to retrieve some envelope without inspecting what documents he removed from the bag, because he was alreeady hnadcuffed and the transportation officer from the city were waiting for him to be transported to court.

26.   Upon arrival at the Court, plaintiff discovered that the envelope he retrieved were for other cases, so he was unable to provide any other documents and exhibits to his attorney.

27.   The same date (11/7/13), upon plaintiff's return from court, he asked Defendant John Doe No. 2 for his property and for help to carry out the court bags to his cell. The defendant refused to accommodate plaintiff with assigned a porter to help him with his property, but, when the escort sergeant arrived to escorted plaintiff and other inmates to the special housing unit, plaintiff again asked for help with his legal bag, but the sergeant and defendant lopez stated to plaintiff that: "if he brings his property, he needs to carry them". At that time a spanish inmate helped plaintiff with the bag to the special housing unit, due to plaintiff's disabilities and age. The defendants refused to provide plaintifff with a reasonable accommodation even though they have five to six porters working for the draft room at all times, in violations of the American with Disabilities Act "ADA" and Rehavilitation Act "RA".

28.   Before plaintiff and other inmates were escorted to the Special Housing Unit (SHU), Defendant Lopez, ("Lopez"), provided plaintiff with his kosher food ("Religious Food") in a brown paper bag, and, due to, plaintiff's religious belief, which is ("Jewish"), and told plaintiff to take the kosher bag with his food to the cell because there was no time to eat the food in the draft bulpen, because plaintiff's will be escorted to the Special Housing Unit, (its common for Downstate officer to sent

While in the way to the special housing unit (SHU), and reach the corridor were is no camera, Defendant Rodriguez, ("Rodriguez") approached plaintiff is a hostile manner (arm back in the strike positionwith  the night stick in hand), and stated to plaintiff, "you complained too much, if you can't carry out your fucking legal papers, don't bring then. I don't care if you are fucking disabled and walk with one leg. We're not going to carry your fucking legal papers for you, you understand? next time don't bring your fucking legal papers because if you complained again I going to disappear you property and legal papers, because you can't carry them meanings that you don't needed. Plaintiff explained to defendants Rodriguez that he want to carried the legal bag, but because the handcuff and the fact he was walking with a cane, it was difficult for him to carry the bag, but the defendant Rodriguez stated to plaintiff that this was not his problem.

29.    Upon Arrived at the special housing unit, defendant Rodriguez took plaintiff's food from him, plaintiff explained to Rodriguez that the "Kosher bag" is his dinner because he is Jewish and Defedant Lopez told him to take the bag to to the Special Housing Unit because it was time to be escorted to the SHU, and there was no time to eat the food in the draft room. Plaintiff also told Rodriguez that there was other inmates who brought their food in their tray.

30.    At that time, Defendant Rodriguez, jumped in front of plaintiff's face and in a aggressive manner screamed, "you are going to close your fucking mouth or I am going to close it for you, you are not allowed to have this food in the first place, so keep your fucking mouth shut and when you are told to do something here, you do it without question, or you'll find yourself in big trouble. You wont be able to get out of! I closed your fucking mouth in a minutes.

(9)

31.     Defendant Rodriguez pushed plaintiff against the wall and told him to assumed a pat frisk position, then another officer frsiked plaintiff, and the sergeant ordered plaintiff to take the food from the desk, but no the plastic bag containing the breads. Then Rodriguez, jumped again and "snatched" the food from plaintiff's hand and stated: **" You are not taking this food back to your cell, where the fuck fuck you think you are, a Hilton Hotel, or in the presidential suite? You eat tomorrow what the mess hall sent you or starved cause you're in Downstate Correctional Facility, this is my home now, you think that we don't know why you're in the SHU? you think we are going to feed you, then you can assaulted us again? I don't fucking care what food you eat, either regular or fucking jewish food because you are all the same shit anyway, so lets go to your cell "black Jeewsh".**

32.     While Defendant Rodriguez escorted plaintiff to his cell, the Defendant and Jane Doe No6 officer, grabbed plaintiff's arm and squeezed it hard. Then plaintiff asked Rodriguez why he squeezed his arm like that? Rodriguez didn't replied until plaintiff entered the cell #23 and the defendant directed plaintiff to the corner of the cell, (**off the view of the outside camera**) then stated to plaintiff. **"I don't fucking care or give a fuck about the fucking camera, ro fucking jews bastard, I'll brake your fucking next at this moment, just say somenthing a single word and I 'll fucking kill you. You think I fucking care about the camera? I know how to work with the camera, now you want to be a fucking jew? you don't see you fucking color? you can't even speak English, and now you come to my country to be a fucking jew bastard!"** Defendant Rodriguez was so closed up to plaintiff's face that, plaintiff could feel Defendant breathe on his

Plaintiff was handcuffed, and while this happened, Defendant Jane Doe NO. 6 officer was standing in front of plaintiff with the stick in her hand also in a stricking position. Plaintiff was scare and told Rodriguez that he is a disabled inmate and don't want any problem". Then Rodriguez reply,"**this is what I thought jew bitch"**.

33. Defendant Rodriguez directed plaintiff to face the wall and pat frisked him again in abusive manner, such as pilling plaintiff's legs apart beyong his ability, causing plaintiff excruciating pain on his knee. Then plaintiff complained and told Rodriguez that he was in pain and he is disable person, but Rodriguez stated that he don't care about plaintiff disability. The uncosntitutional violations and the force use on plaintiff legs was callously done to exacerbate his disability and cause himto suffer. Then Rodriguez directed plaintiff to faced him, who has the 'black glove" and was in stricking position, plaintiff immediately began shaking because all the time he was handcuffed and he was very scare. Defendamt Rodriguez asked plaintiff **"You wanted to resolved this problem now? I don't care about the fucking camera, I can fucking fixed you up, if I wanted to kicked you fucking black jewish ass, I just do it right now, you know I can fuckingkill you right now!** The defendant was hitting plaintiff on the chest while talking, and pushing plaintiff against the wall all the time while Jane Doe was standing there watching the abuse while Rodriguez continuing abusing plaintiff and failed to intervened, even thought, plaintiff was "handscuffed".

34. After Defendant Rodriguez saw that plaintiff didn't do nothing, he repeatedly slaping plaintiff several times in the face while asking the plaintiff, **"you are not goin**g **to do something? you not going to do somenthing black Jew?.** Then he ripping off plaintiff's shirts and T-Shirst in front of Jane Doe (Female officer), who was all the times present with the stick in her hand in stricking position. Plaintiff was at all times handcuffed, which violated plaintiff's rights. Defendant Rodriguez maliciously and sadistically

35.    After defendant Rodriguez finished his abuse, he threatened and
intimidated plaintiff by stating: **"I hope you don't tried to file a grievance
or complaint about what transpired here, be a man. I just gave you a lesson
for what you did to the officer at Green Haven Correctional Facility, and
you are not going to do the same to other officers again, even thought I
could seriously harm you very bads or kill you. If I heard from you in any
way, either by complaint or grievance, you are going to heard from me too,
and you will see me personally. And if you see me again, next time I am
going to make sure you not filed more grievances, also forget about your
property. You know that inmates with bag legs can "fall" all the time in
the stairs or while on the way from the draft to SHU:(please note that
on the way to the SHU there is a lot of stair), and most of the time all
the property is missing including grievances and complaint, and motions".**

36.    Defendant Rodriguez asked plaintiff: "You take medication? and
without waiting for plaintiff's response, he stated, becausee today I work
in the medical department with the medication run as escort officer, and
you are not going to take medication today while Iam here, not today. So
drink water for the pain, I don't care if you drop dead. Then defendant
Rodriguez removed the handcuffs from plaintiff, and told plaintiff to face
the wall and don't moved until he left the cell, plaintiff follow thee
instruction. Whi;e on the wall, Rodriguez and Jane Doe officer acting like
they left the room, but were standing on plaintiff's back waiting for him
to turned so they can justified any assault on him. Plaintiff was on the wall
until he heard the door closed. Then he turned and saw Rodriguez with the
stick in his hand smiling at plaintiff. Then both defendants left the area.
Plaintiff didn't resist all the time he was abused by the defendants, he was
subjected to the abuse in retaliation because he was accused of assaulting an
officer and because his religious beliefs.

37.     After Rodriguez left, plaintiff was afraid to reported the abuse, he was afraid to go to the hospital because the threats made by the defendant and because the hospital area is the main spot in which inmates are being assaulted due to the lack of cameras. Plaintiff waited for his medication and have the opportunity to request any additional medical care and treatment from the nurse, and request pain medication.

38.     The same date, around 8:00 p.m. the nurse entered the special housing unit with the mental health nurse doing the medication run, Defendant Rodriguez was the escorting officer, plaintiff was in the door waiting for his mental health medication and regular medication. Upon Defendant Rodriguez entering the plaintiff's gallery, plaintiff asked for his medication, but his request was denied. Plaintiff didn't received his other medication either for several days without any reason, and despite all threats, plaintiff was forced to filed a grievance and complaint against Rodriguez, even though he not documented all the evens on the grievance(which is not mandatory) for being afraid of Rodriguez retaliation against the plaintiff. See Exhibit (D) Grievance DSR-12902-13. Plaintiff also requested a copy of the audio visual DVD for the incident, Foil number 13-280, See exhibit (E) Foil Request.

39.     On November 8, 2013, plaintiff filed a complaint with defendant ADA Perez, listing the ongoing violations and abuse by her subordinates. The defendant never answer plaintiff's letter nor placed and investigation on this matter, plaintiff personally requested from the defendants investigation but she stated that plaintiff filed too much grievance. See Exhibit (F) Complaint, and letter dtated 11/8/13 to defendant, and first grievance.

40.     On November 12, 2013 between the hours of 6:00 a.m. and 8:00 p.m. John Doe #3 came to plaintiff's cell #23, and informed him that he was on draft to be returned to Clinton C.F. and wanted plaintiff to packed up. At taht time, plaintif told the officer that was inpossible because he just start trial in family court on 11/7/13 and was schedule to other days (11/15/13),

(13)

12/11/13 and 12/13/13. Plaintiff further stated to the defendant that there was amistake, he produced a copy of the order to Produce and a letter from his attorney (Gemma U. Thomas)., The Defendant read the documeents, but still demanded that plaintiff give his property to be packed up, including all his legal papers, and motions to other cases, criminal and civil, and all thee mail received at the facility. The defendant John DoeNo.3 packed plaintiff's property place it in a plastic "garbage bags" and left the property in the outside the block next to the regular garbage bags. See exhibit (G). Affidavit of Christopher Patterson ID NO. 13-A-4226. Also see Exhibit (H) Foil Request to preserve the Visual and Recording Incidents. AND FIRST GRIEVANCE FILED

41.    On the next date (11/13/13), plaintiff again spoke with the morning officer, explained to him his situations and produced the copy of the documentation showing that plaintiff was in trial.Plaintiff asked the officer for help, so the officer called Inmate Record Coordinator and explained his plaintiff's situations.

42.    The officer returned half hour later and informed plaintiff that "in deed plaintiff was corect and the draft John Doe #3, and draft supervisor were wrong. He further stated to plaintiff that "nobody" knows who ordered that plaintiff to pack his property to be returned to clinton Correctional Facility. The officer furhter stated that he called the draft supervisor (Defendant Jonh Doe No.1), and informed then that plaintiff transfer was canceled, and they need to return his property, but the defendant told plaintiff that his property was not in the draft room. The officer called a couple of time and again notified defendant that plaintiff's next court was on 11/15/13, and he needed his legal papers and exhibits.

43. PLaintiff kept complaining all days and requesting his property in oral and written letters to the defendant, draft supervisor(John Doe #1), seeking his legal papers, but he never received his court documents and property. See Exhibit (I). Letters.

44.    On the same day and night, plaintiff explained the situation to
Defendant "B. Lordo" who was the one that ordered Defendant John Doe No. 3
to pack plaintiff property. She stated to plaintiff that "if she ordered the
officer to pack plaintiff property for draft, it is because he is going to
be transferred no matter what others said and she was not going to make
any phone calls to the draft room for plaintiffs property, because it was
not her problem if plaintiff was in trial. See Exhibit (J) written request
dated 11/13/13.

45.    On november 14, 2013, around 6:00 a.m. the block officer woke
plaintiff and directed him to put on his clothes because he was in transit
to be transferred to Clinton Correctional Facility and plaintiff has to go.
Again plaintiff explained his situation to the officer and producing all
the letters and order to produce showing the upcoming trial dates, but the
officer and supervisor ignored plaintiff's doccuments and handcuffed him,
then escorted him to the draft room to be transferred to Clinto Correctional
Facility.

46.    Upon plaintiff's arrival at the draft room, "John Doe #1. The
Defendant told plaintiff that "if plaintiff was brought to the draft room
it was because he will be transferred". Plaintiff produced the letter and
order to produce, but the defendant stated to plaintiff that the Court
"re-schedule" another Court date if they need plaintiff, then the Defendant
left the area.

47.    Plaintiff was in the draft holding pen since 6:00 a.m. waiting to
be transferred for approximately three to four hours, then another sergeant
was called to escorted plaintiff back to the special housing unit "SHU".
Plaintiff was informed that there was a mistake and the draft (transfer) was
canceeled, plaintiff asked defendant for his property, and the defeendant
told plaintiff that  there is no property for plaintiff in the draft room,

(15)

then directed the escort sergeant to take plaintiff back to his cell and before plaintiff left the Defendant stated to plaintiff, "filed grievance" this is what you always do, so one more not going to harm. Plaintiff sent several letters to Defendant inquiry about his property. See Exhibit (K) Grievance DSR-12, 99.3-14

48.   On November 15, 2013, plaintiff was brought to the draft room to be transported to court for his second day in trial. Upon arrival to the draft room, he asked the Defendant for his property. Plaintiff was informed that there was no property for plaintiff. The Defendant asked plaintiff "who packed his your property because what happened was unusual", so plaintiff was produced to court for trial without his legal papers or exhibits that he wanted to introduced at his trial,and due to the loss of his papers plaintiff case was prejudice to the point that plaintiff's only was allowed to see his daughter.

49.   At trial the judge asked plaintiff to make a decision in his case, or either go forwarded with the trial without the evidence and exhibits or the judge will be called a mistrail. Base on the loss of plaintiffs legal paper and including exhibits to present at trial, the Judge called for "mistrial", plaintiff notified the Judge that the Defendant destroyed his property, in retaliation and in violation of his right, he told the court that he was challenging this case for seven years and at the end of the case the Defendants destroyed all his evidence and exhibits. See Exhibits (L) Court decision.

50.   Upon returned to the facility, plaintiff was very depressed, confuse, he struggled to maintain a semblance of mental and emotional stability while in "SHU", he was feelings of dread and fear caused by the fact that he loss his case and on top of that he was in extreme isolation, he was feeling sudden and uncontrollable mood swings. He was alternately anxious, bored, paranoid, and apathetic, while thinking about the loss of

his case and legal papers incliding exhibits,  at one time he experience an episode in which he black out then later he was overcome by an inability to speak. He was deeply distressed by this episode, his psychological health deteriorated significantly after his legal paper were destroyed and he loss his case, he experienced loss of motivation, enxiety,nervousness, more panic attacks, irrational anger, rage, loss of impulse control, paranoia, severe and chronic depression,concentration deficits, difficulties with memory, social withdrwal, and cserious confusion, including loss of appetite, and the most important he loss the opportunity to had visit with his daughter, and all because the Defendants destroyed his legal paper, he could go forwarded with the case and presented his evidence, but because the loss of the papers this was difficult. It was very important for him to have his evidence for trial, because he wanted to be granted visitation with his child that he did not have contact with since 20005. But the loss of his property not only cause him prejudice with his case, it also cause him physical and emotional injuries. Plaintiff filed a grievance against the Defendants for this violation.  (See exhibit (M) Grievance DSR-12927-14. **(consolidate)**

51.    On November 17, 2013, (two days later), plaintiff's depression continued, including he was experienced nightmares, panic attacks at night, due to the mistrial on his case and the loss of his property, and the fact that he loss the documents and exhibits pertaining to his criminal case and other civil matters, but the most disturbing situation was that his **"brother was killed a month before(October 2013).** Plaintiff requested to see the mental health psychologist or any mental health staff to discuss the problem he was experiencing, and the block officer told him that the mental health unit chief will be notified.

**(17)**

52.    On the same date defendant "Smith", Mental Health Psychologist, initiated a common plan of Unconstitutional in that she callously and deliberately refused to provided plaintiff with mental health care while in extreme isolation "SHU". While doing around plaintiff asked defendant smith for help and explained that I loss trial and I was not able to see my daughter because the loss of my property and I was experiencing severe depression, flash backs and other simptoms, such as **"anxiety, nervousness panic attacks, irrational anger, rage loss of impulse control, paranoia, and severe chronic depression, difficulty with memory, confusion, severe headaches, and on top of that plaintiff was in extreme isolation,.**

53.    The defendant was well aware that plaintiff has mental illness upon prior examination and his mental health records at the time he requested mental health assistance. Plaintiff told the Defendant that he **"he don't know what to do with himself, because he was running out of options at that time.** Plaintiff was tearly eyeds, depressed, nervounes. He further told the Defendant that **"he was doing the best not to act out though, including that he was having "suicide though" some times after    what had occurred to him since the destruction of his property and exhibits for his case, and on top of that, his brother was killed and he loss the opportunity to visit with his daughter".** The defendant ignored plaintiff's request for mental care and assistance, or more medication, instead Defendant told plaintiff to **"DRINK COLD WATER AND EVERYTHING WAS GOING TO BE OKAY".**

54.    Plaintiff's show symptoms for which an "immediate observation" care in a facility clinic or mental health unit was appropriate because plaintiff was likely to cause serious harm to himself or others.  the Defendant knew that plaintiff's conduct would cause serious harm to himself or other, but she deliberately ignore plaintiff's request for help, even though he continued requesting help from the Defendant while **"tearly"** made

a statement and conducting himself in a manner which in a person who is not mentally ill would be deemed disorderly conduct or which is likely to result in serious harm to himself. Such plaintiff's conduct should have been treated before it was too late but the defendant "deliberately wilfuly and with premeditation ignored those warning signs that are difficult for any observer to miss, because defendant knew that plaintiff was mentally ill and unstable, and that he was undergoing a particular stressful time with the dead of his brother, the loss of his property and case the only opportunity to visit with his daughter, and the most important, the defendant knew that plaintiff was suicide and he has suicide attempt in the pass, she never asked plaintiff if he was okay or if he was thinking of suicide? even though plaintiff told her he having suicide though at times.

55.    The Defendant further told plaintiff that she was **"busy"** and she was only doing "round" while repeating to plaintiff to **"drink cold water"**. Every time plaintiff attempted to discuss his mental health problem, or his personal problem, the respnse from the defendant is **a "brush off"**, she was not even looking in plaintiff's eyes, and while plaintiff continued to explain his situation, the defendant kept looking at her watch, and rolled her eyes like she was not listening. Plaintiff described his feeling to the defendant as "either wanting to explode for no reason, crying, he would no cconcentrated, feeling "nervous wreck". He told the defendant that **"his life had no substance, nothing to grasp onto, and when he goes to recreation the handcuff getting tighter".** then the defendant told plaintiff that it wwas getting late, and there was nothing wrong with plaintiff, and again told plaintiff to **"drink water"**. The defendant also told plaintiff that some inmates just wanted to go to different prison and bring their problem to mental health psychologist to resolved that proble, so plaintiff told her that this was not his problem that he only need mental health care, but she ignore plaintiff's serious mental health issues, and failure to

provide care that conforms to a minimum standard of knowledge and ability. The Defendants who is a mental health psychologist is require to have and use the knowledge skill, and care ordinarily had and used by members of the medical profession in good standing. The Defendant failure to 1). a deviation & departure from accepted practicee, and 2). evidence that such departure was a proximate cause of further injury & damage to plaintiff's health, in violation of plaintiff's constitutional rights.

56.    Plaintiff is long and undispute history of mental health problems, alcohol abuse, and suicide threats and attempts - including suicidal ideation the day plaintiff's requested assistance, and the defendant were aware that plaintiff's have a mental illness upon examination of plaintiff's and his medical records numerous of times, and at the time of his request for services, the defendants saw that plaintiff's was engaged in highly emotional conduct, and observed that his conduct likely to result in serious harm to himself or others. Plaintiff was involuntarily committed to mental health hospital on two separate occasion, and whilee in the custody of the DOCCS he was placed on suicide observation for threatening or attempting suicide including couple of days before he was transferred to Downstate Correctional Facility, and the defendants was also aware of this incident.

57.    On November 18, 2013, the next morning after defendant denied plaintiff's services and care, plaintiff was issued a state razor because was shower day, plaintiff disabled the piece and **"swallowed the meetal razor blade to kill himself"**. He was ambulated by the doctor who ordered ad X-ray and determined that in deed there was a **"foreing object present in plaintiff's stomach"Razor Blade". Plaintiff informed the doctor and staff that he swalloed the razor blade in attempt to stopped his hart and kill himself"** See Exhibit ( N ), Ambulatory Health Record dated 11/18/13.

58.    The same day (11/18/13), plaintiff was transported to Emergency Room at Putnam Medical Center for further treatment and care. While at the

hospital, the doctor confirmed that there was indeed a razor blade in the plaintiff's left mid abdomen lateral to "L-3". But the radiopaque foreing body is seen within medial right uper quadrant lateral to "L-1". The blade was bitten in half or broke at some point in two metallic blade one was locate in the stomch and the second move into the **"Ceccum and lodge into the Cecal Wall".** Plaintiff agreed to attempt at endoscopy retrival, in which he faced a serious kisk that included, **"indications, potential complications including but notlimited to bleeding, infection, allergic reaction, perforation,** all were discussed with plaintiff and all questions were answered, he signed a consent and sedation was administered for the operation.

59. the same day(11/18/13) plaintiff was taken the operation room for possible "endoscopy or Cecostomy" to remove the razor blade under under anesthesia, he endure the first operation and portion of a bare razor blade that was locate in the distal antrum .

60. After the first endoscopy, the doctor conducted another X-Ray of the abdoment and shows the other piece of foreign body which was a razor blade, located into the small bowel or into the right colon. The doctor placed plaintiff in observation and try some clear - liquid diet and Golytely for easy passage of the foreign body throughout the colon, and incase plaintiff had some acute abdomen or increasing pain, he will need s surgical intervention for the same.

61. On November 25, 2013, eighth (8) days later, and after one piece of the razor was taken from plaintiff's stomach, and the second razor blade move into the cecum and lodge into the cecal wall without any further prograssion despite the plaintiff was given a several attempt of "Golytely" for mechanical removal of the foreign body, finally it was decide to take plaintiff to the operating room again for diagnostic "Laparadoscopy and possible cecostomy to remove the foreign body under general anesthesia".

plaintiff endure the second operation to remove the razor blade from his
stomach, he was admitted to the hospital for approximately seventeen (17)
days and while at the hospital he was denied contact with his family by
the correctional officers even though he was assigned an phone in his room
also the defendant "Ada Perez" never notified plaintiff's family of this
incident in violation of the DOCCS rules and regulations, only to cover up
the fact that defendants violate plaintif's rights and were delieberately
indifference to his medical need, and the result of the denial of care
for his mental health issues resulted in plaintiffs mental illness suffering
psychiatric deterioration and the threats to plaintiff's health which was
objectively serious, and because he his mental problem was untreated, he
suffered further significant injury that could cause him the dead.

    62.   The defendant clearly showed delieberately indifference to
plaintiff's medical needs, and the suicide attempt, resulted in plaintiff's
hospitalization for seventeen "17" days and two operation. See exhibit
( O ), Medical Records.

    63.   On December 3, 2013, plaintiff was discharged from the hospital,
upon returned to Downstate Correctional Facility he was placed on "suicide
watch", he was housed in the facility hospital in a room with only a mattress
on the floor, which caused plaintiff's pain every time he tried to sit down
or stand up due to the operation on his stomach. Plaintiff was ordered to
removed all his clothes that made his injury and operation worse and caused
more pain because the operation was fresh, the room was cold, dirty, and
unsanitary with no toilet or sink to drink water, there was one chair in
the room but the officer removed the chair so I had nothing to sit on, I
asked the nurse for the chair so I can sit but she told me that the defendant
(John Doe #5,) ordered her to removed all the chair from the plaintiffs room.
Plaintiff was in pain all, night and was unable to sleep all night.

64. On December 4, 2013, Defendant John Doe No. 5( Mental Health Unit Chieft), interviewed plaintiff in reference to the events , and attempted to kill himself, she addressed plaintiff like if she was **"prosecuting him"** while plaintiff was still in pain and was seriously depressed for the death of his brother and the loss of his case, he still confused and despite of all that the defendant behavior was accusing plaintiff of some crime. She screamed to plaintiff and repeatedly asked "why he swallowed the razor blade? plaintiff just tried to explained to her that there was a lot of events on his head, but the defendant was challenging plaintiff in reference to the account of the events, she made plaintiff crying and upset, she was not trying to help plaintiff in any way. She also was accompanied with several security staff and tried to force plaintiff to make choice between divulging highly personal medical and mental health details that may subject plaintiff to abuse or exploitation in order to receive care, or to forgo requesting care in order to preserve confidentiality and his personal safety.

65. The defendantpolicies and personal agenda with plaintiff foresseably stifle request for necessary care. Plaintiff was afforded practically no confidentiality wit regard to request for necessary medical and mental health care by the defendants. At the time of the interview the defendant was in the room with mental health staff and security staff while asking plaintiff question about the suicide attempt, and force plaintiff to articulate his confidential medical and mental health concerns within earshot of staff, including other medical personnel that has nothing to do with the mental health issue, despite the confidential nature of his mental health problems and despite the  fact that plaintiff concerns often involved problems with the security staff who were standing within earshot of the conversation. Also plaintiff concerns also involved the death of his brother and the family court issues in which he loss the visitation with his daughter at least forth times in a years, because the defendants destroyed plaintiff's legal

66.     At the time of the interview plaintiffs emotion became capricious uncontrollable, and extreme. He was upset with the defendants prosecutorial questions in front of the security staff, including by the way she accused plaintiff. At the time of the interview, the defendant pressured on plaintiff complicated his mental health problem, had though of harming himself and committing suicide, because the defendants actions and unprofessionalism. The defendant note plaintiff behavior and stated to other staff, that "plaintiff was feeling little mad, but otherwise well and he will be discharge to another housing unit and continuing in "observation for couple of days". The defendant acted carelessly while interviewing plaintiff in attempt to cover up her deliberate indifference to plaintiff's medical need and in violations of plaintiff's constitutional rights.

67.     On December 4, 2013, plaintiff was discharge from the facility hospital and housed in D-Block, 20 cell, and placed in the "observation room" by the defendant John Doe #5. Plaintiff was interviewed by the defendant the next day and while at the room the defendant continued the same form of interview and prosecutorial tactic against the plaintiff, including by asking plaintiff's couple of times that "if he attempted to committed suicide only because he wanted to be transferred to another prison?'. While in D-Block defendant deacon asked plaintiff why he was in "Suicide watch?" plaintiff told him he was there because he attempted to kill himself.

68.     On December 8, 2013 defendants J. Deacon and Schmitt approached plaintiff and began an common plan to encourage plaintiff to made another attempt to kill himself to the point that they brought plaintiff breakfast and while having a conversation and defendant Deacon asked that if he made another attempt to kill himself "they be able to get more overtimes work by washing plaintiff". Defendant Deacon asked Schmitt, **"so you not going to work tomorrow?, Schmitt reponded, "if Quezada swallow another razor or something or cut himself I amy get overtimes"**. Then couple minutes later the Defendant

brought plaintiff's breakfast and stated to plaintiff, "Quezada tehre is a plastic spoon in the tray, if you want to get out of here, just do somenthing and cut yourself and they had to move you to another cell because you supposed to be other block with your prpoerty" Plaintiff was confused and the fact that the defendants continuing encouraged him to cut himself or to kill himself, plaintiff broke the spoon and cut his wrist in front of the defendants which were laughing and telling plaintiff to do it hard, then after half hours later, the defendants called the supervisor, Defendants John Doe No.2, and told him that plaintiff cut himself, but the defendant John Doe #2, told Defendants Deacon and Schmitt not to called the facility clinic, and told then to called the mental health nurse which they did.

69.    Couple minutes later one of the mental health staff arrived at the block and was able to talk to plaintiff and strongly advise him not to cut himself with the spoon and returned the spoon to the nurse, which he did. After the nurse left, the defendants were laughing and joking that plaintiff didn't "didn't cut his wrist hard and they are not going the get overtime." The plaintiff asked the defendants for a razor blade, but they refused and stated to plaintiff "no you are not good for this, now we are going topunished you for failed this, because if you cut your self hard we could had an overtime and made some money, so you not going to eat now , first because this is the first time I see a "Black Jews. The Defendant then wrote on the window door the word, "BLACK JEWS DON'T EAT", they were encourage plaintiff's to made the attempt to suicide and cause self inflicted injuries for then to be able to get "overtimes" work. The same date they denied plaintiff his food and told plaintiff that "they wrote in the log books that plaintiff refused to eat.(Please note that plaintiff was not allowed to had spoon on suicide watch pursuant to DOCCS rules and regulation and mental health order". Plaintiff filed grievance against the defendants. See Exhibit ( P ). Grievance DSR-12935

14.                              (25)

70.    On December 9, 2013 Plaintiff was move to the Special housing unit SHU, while there Defendant Smith saw plaintiff injury on his left wrist, plaintiff explained to her that this was a self inflicted injury cause by a spoon while in "observation room " in D-Block, Plaintiff told the defendant that he never received medical care and that the injury was infected and he need medical care, but the Defendant again declined to inform the medical department even though plaintiff informed her that he filed several sick call and nobody called him to the clinic, and he wanted to go to the clinic before the injure became more infected. The defendant told plaintiff that his injury was not serious and she was going to talk to the medical if she had time, the plaintiff asked several time for help in reference to his injury and care but she refused telling plaintiff that "his injuries was no serious" and nothing she do for plaintiff.

71.    Plaintiff explained to defendant Smith that he began again to experienced serious depression about this matter, including panic attack, nightmare and other simptoms, but she declined to help plaintiff and told him that she just doing the round in SHU and she was busy and left without provide plaintiff with any care or assistance.

72.    On December 12, 2013 plaintiff filed a grievance against Defendant John Doe No. 4 (fodd Service Administrator), becausee the defendant again initiated a common plan of unconstitutional behavior in that he or she calloously and deliberately refused to provide plaintiff with his religious meal(kosher) and an alternative for tuna fish once prescribe by the doctor. Plaintiff is allergy to tuna fish, his allergy cause other side effect such as Swollen face and rash on his boddy, and vomited. Also the tray always was missing item and the defendant refused to provide plaintiff with the items missing, and defendants knowingly replace the sardines for tuna fish to cause plaintiff pain and starved him because they never sent the alternative for tuna. The defendants also sent plaintiff the soup with cold water so he cannot

(26)

properly cook the soup and continuing the starvation, including the pain on his stomach when he eat the un-cook soup. Plaintiff filed a grievance DSR-12926-14. See exhibit ( Q )Grievance DSR-12926-14

73.    On  December 16, 2013 plaintiff filed another grievance that was also consolidate with with grievance DSR-19227-14. See exhibti ( R ) grievance filed 12/16/13 for the unconstitutional violation against the defendants.

74.    On December 19, 2013 plaintiff was transferred to Clinton Correctional Facility without his property and legal documents destroyed by the defendants(John Doe 1, John Doe 2, John doe #3. and Rodriguez).Plaintiff other trial was scheduled for the same month of December and he was trying to continued to challenged the family court case.

75.    On December 23, 2013, plaintiff was transferred back to Downstate Correctional Facility. While in transit to be transferred to Five Points Correctional Facility(plaintiff new owner Facility) he never received the legal documents or property destroyed by the defendants at Downstate C.F. Plaintiff filed a grievance against the defendant Ada Perez,  Downstate Correctional Facility Superintendent, defendant John Doe No. 1,2,3 and defendantAzzinaro. See exhibit ( S ) grievance  DSR-

76.    On December 29, 2013 plaintiff filed a complaint with Defendant Ada Perez, against the Defendant K. Watson, IGP Supervisor because the defeendant Wakson continued harassment. Here she callously and deliberately refused to follow DOCCS Directive , and repeatedly destroyed and refused to filed and forward plaintiff grievances and appeals to the appropriate officials, to cover up staff misconduct. Watson in conjunction with other defendants stated that several times that she's not going to file his grievances because plaintiff complained against her with the superintendent defendant (Perez). Watson also told plaintiff several times to stop filing grievances and if he want to filed grievance, to do it at his facility or when he returned to his facility because she is too busy and he complained against

77.   **77.**     On February 8, 2014, plaintiff filed a grievance against the Defendant John Doe #5. The defendant again initiated a common plan of the unconstitutional behavior in that she callously and knowingly, deliberately denied plaintiff mental health care and treatment, even though plaintiff was diagnostic with serious mental health illness, and having a lot of serious episodes that require mental health treatment and observation, but the defendant disregarded and dismissed those problem only because plaintiff was in the Special Housing Uni or Extreme Issolation, and the Defendant don't want to "diagnosed plaintiff with other serious treatment, because that way in conjunction with the Defendant Perez can keep plaintiff in the special housing unit for five years without treatment and unconstitutional confinement in Downstate Correctional Facility.

**78.**     The defendants John Doe #5, and Perez were well aware that plaintiff was suffering with mental health problem, and were well aware that "maintained plaintiff in extreme isolation cause psycholigical and neurological hamms to plaintiff by the isolation, included hallucinations, severe and chronic depression, depersonalization, social withdrawal, apathy, anxiety, nervousness, night terrors, panic attacks, irrational anger, rage loss of impuse control, paranoia, clastrophobia, concentration defits, difficulties with memory, and preceptual distortions, including self inflicte harms and dead. They were aware that because the risk of harm, the severe pain it causes, and the affront it represents to basic human dignity, and almost all state in the country, including New York, have long prohibited the imposition of solitary confinement as punishment for a criminal offence. Thedefendants continues to denied plaintiff's mental ehalth treatment and care to keep him in isolation, even thought they were aware that the denieal of mental health treatment to plaintiff who was imposed five years in the extreme isolation was torture, cruel, inhuman, and degrading treatment. In plaintiff situation the defendan John Doe No 5 was also aware that plaintiff

brother was killed couple months before plaintiff attempted to commit
suicide. In this complaint plaintiff identified all the problem with the
defendant denial of mental health treatment, including after he swallowed the
razor blade. See exhibit ( T ). Grievance DSR-12953-14.

79.    On February 11, 2014, Defendant Lordo callously and deliberately
denied plaintiff his koshe meal. That date plaintiff received his kosher
meal and he notice that the water to be used on his soup was no hot, it was
cold water, he asked the defendant for hot water because the cold alternative
diet food for dinner is soup and the plaintiff shall be provided with hot
water to cook the soup, but the defendant in retaliation because plaintiff
filed grievances always denied plaintiff hot water, instead she placed cold
water so plaintiff cannot be able to eat his food. That date plaintiff asked
the defendant for hot water and she stated to plaintiff that there is not
hot water and if he wanted to cook his soup he should asked the "**grievance
office for hot water**", so plaintiff complained to the facility captain about
this matter.

80.    On February 12, 2014, the next date, plaintiff received his kosher
food, again he notice that there was cold water, the defendant delieberately
tampered with the "hot water" sent by the mess hall and placed cold water
in plaintiff's cup in retaliation for plaintiff's grievances. Plaintiff
notified the defendant about the cold water and received the same answer,
and the defendant stated that she's not waorking on the mess hall and if
plaintiff wanted hot water he need to stopped filing grievances. So plaintiff
didn't eat that date either and the defendant asked for the soup cup couple
minutes later and plaintiff told her that he didn't eat because there is no
hot water and he was waiting for the hot water, so the defendant gave
plaintiff a direct order to returned the soup cup, or the soup because he
was not allowed to keep any food items in his cell because he was in the
special housing unit, so plaintiff returned the soup without eat it because

there was no hot water and the soup only can be cook with hot water.

81.    On February 13, 2014, again plaintiff received his kosher food, and the defendant tampered with the food and removed the hot water and replaced with cold water. Plaintiff again complained with the defendant about the hot water and told her that he didn't eat for couple days because the water was cold and the mess hall supervisor stated that they sent the hot water to the block. The defendant stated to plaintiff, "get pen and paper and filed grievance against the mess hall the same way you do it against me", plaintiff asked her why she not provide hot water from the "microwave" that is in the block because I am entitled to eat, but she refused and told plaintiff that the microwave is for her used and she the Union purchase the microwave for her to used", plaintiff tried to explained to her that the captain already directed the block officer that if the water is cold for kosher meals, they need to used the microwave and provide plaintiff with hot water for him to eat his meal, but she stated to plaintiff, "you filed grievance against me and you want hot water from me?, I don't thing so, then left.

82.    Plaintiff, made every effort to resolved this problem because he was taking a lot of medication and the fact that he was not eating the food for lack of hot water, he was experiencing a lot of pain and other medical problems. For example, defendant lordo leave the food in the table after the mess hall delivered to the block, and the food stayed on the table for about 45 minutes before she started to served to inmates, and the kosher food she served the last, in retaliation for the grievance filed against her, and in violation of plaintiff constitutional right. The first time plaintiff eat the food with col water and the same night he experienced stomach pain at night, he was sick for couple of days, and the fact that he take medication for the stomach and high blood pressure, mental health, over active tyroid, and other medical problem, cause plaintiff a lot of

medical problem. See Exhibit ( U ) Grievance DSR-12956-14

83.    On February 22, 2014, plaintiff filed a complaint with Mauren Bosco, Executive Director Central New York Psychiatrist Center, against Defendant John Doe No. 5, for the deliberate indifference to his medical need and the denial to provided care and treatment to plaintiff that cause serious physical physical and psychological injuries after he tried to kill himself and for the continuing denial of mental health treatment. See Exhibit( V ) complaint dated 2/22/14, and response.

84.    On February 24, 2014, Plaintiff received the I.G.R.C. decision on Grievance DSR-12934-14. Defendant Watson sent this decision through the legal mail. The same date plaintiff signed the decision and appealed to the next stage, and notified the defendant that he received this decision on 2/24/14, then forwarded to her the same date. See Exhibit ( W ) Appeal.

85.    On March 11, 2014, Defendant notified plaintiff by memo and stated in this memo, "that she sent the appeal via mail on 1/24/14, and according with the law library officer at Five Points Correctional Facility plaintiff received this mail on 1/27/14". The Defendant returned plaintiff appeal and refused to  processed, in retaliation for plaintiff's complaint against her. See Exhibit (X  ), Memo by watson.

86.    On March 16, 2014, Plaintiff sent another letter to Watson and explained to her that she was retaliating and was wrong about his appeal, because on 1/27/14, plaintiff received the defendants Perez decision on grievance DSR-12,926-14, and he signed the same date and sent the appeal back to her. Also he explained to Watson that the legal mail officer only documented in the legal books the reurn to sender address but not the grievance number or IGRC Decision. Plaintiff also explained to her that he was in Downstate CorrectionalFacility on 2/4/14, for hsi case and he talk to her about his grievances while in SHU, then he wrote to the mail

and requested that all his mail be sent to Downstate Correctional Facility, and **by the time his mail were** forwarded to Downstatw, **plaintiff** was already in transit back to Five Points C.F. on 2/20/14, and for this reason he received all his mail at the same time including the IGRC Decision. But the Defendant already told plaintiff that she don't wanted to filed his grievances and appeal in retaliation for the complaint filed against her, in violation of plaintiff's constitutional right and to petitioner the goverment. See Exhibti ( **Y** ), Letter dated 3/16/14.

87.  On April 28, 2014 plaintiff filed another grievance against Patrick O'Neal, IGP Supervisor at Five Points Correctional Facility. This grievance was filed at Downstate C.F. with Defendant Watson, "IGP Supervisor". Plaintiff complained that Mr O'Neal refused to filed his grievance in attempt to cover up staff misconduct at Five Points Correctional Facility and in retaliation for complaining against him. Defendant Watson, again while acting in concert with Mr. O'Neal and other staff, callously and deliberately refused to filed plaintiff's grievances, stating that plaintiff complained too much against her and other IGP Supervisor.

88.  On April 30, 2014, plaintiff filed another complaint with the Central New York Psychiatrist Center, "Mauren Bosco", complaining against Defendant Jane Doe N.5, Smith and Dinardo, mental health staff at Downstate C.F. Plaintiff again complained because on 4/24/14 he was produced to Downstate Corrrectional Facility and after he was screening and interview by the Supervisor upon his arrival at the Facility and answered all question, including that he was not suicide and was assigned his cell. Couple minutes later Defendant "Azzinaro" approached plaintiff's cell and told him that Defendant Jane Doe No. 5 ordered that plaintiff be placed on suicide watch for no reason, plaintiff asked the Defendant "Azzinaro" what was the reason he was been place in suicide watch?.

89.     The Defendant "Azzinaro" told plaintiff that he was in suicide
watch because he filed complaint against Jane Doe No. 5 Defendant, mental
health unit Chief, and because because plaintiff was complained that he
he was not receiving mental health care. Defendant Azzinaro asked plaintiff
if he filed grievance or complaint against Jane Doe No 5? which plaintiff
responded positive, then Azzinaro stated that there was the reason and if
he was aware of that he also placed plaintiff on suicide watch.

90.     The next date plaintiff was called for the interview with  the
Defendant "Jane Doe No. 5". Upon plaintiff entered the room, Defendant
stated to plaintiff, " we meet again Mr Quezada's after you filed the
complaint and grievance against me and complained that I didn't provided
you mental health treatment, so Mr Quezada, you was treated good last night?
Isee". Plaintiff replied to defendant "sarcastic" comment because plaintiff
was on suicide watch, so plaintiff told her " because you forced me to
meet with you by ordered that I be placed in "Suicide Watch", why?, then she
stated, because you filed grievance and complaint that I didn't provide
you mental health treatment. She further stated, "also you can thanks to the
"New York Liberty Union" they filed a law suit against Dowstate because
we not provide mental health treatment to inmates in SHU, now I have the
power to do what I wanted including placed you on suicide watch even if
you're not suicided.

91     Plaintiff asked the defendant that if she was going to placed
him on suicide watch every time he be produce to Downstate C.F for court?,
she responded that other inmates not, but plaintiff will be placed on the
suicide watch list for complained that he not received mental health care
and treatment, and all was because plaintiff filed complaint against her.
He asked Defendant Jane Doe No. 5, if she was retaliating, because that was
a clear retaliation and a violation of his constitutional rights, the
defendant threatened plaintiff to keep him on suicide watch if he file more

(33)

grievances and complaint against her. The central New York Psychiatrist
center contact the Defendant in this matter, even though she told plaintiff
that she ordered him to be placed on suicide watch in revenged for the
complaint and grievance filed againsther, including because the "New York
Civil Liberty Union" filed the suit against the facility.

92.    On May 25, 2014, plaintiff sent another letter to Defendant
Watson, IGP Supervisor in reference to the grievances DSR-12, 93414, and
DSR-12, 956-14 and other grievances filed. This letter was because the
Defendant again refused to filed plaintff's grievances and appeal in
retaliation for complaint filed against her. See Exhibit ( Z ) Letter dated
5/25/14.

93.    On July 10, 2014, upon plaintiff arrival at Downstate C.F. and
escorted to the SHU, Defendant "Azzinaro" conducted the interview on the
plaintiff and mental health screening, asking plaintiff's multiple question
related to mental health issues, such as if he was mental health patien? if
he was suicide?. Plaintiff answered all the question including that he was
not suicide. This form then was sent to Jane Doe No. 5.

94.    On July 11, 2014, while plaintiff was in his cell doing his legal
work and preparing for trial, Defendant "Dianrdo" approached plaintiff and
demanded to speak with him, so plaintiff told her that he was okay and he
don't wanted to speak wit her at that time, and because when he really wanted
to speak with mental health staff, they denied himtreatment, andbecause that
he caused self inflicted injuries and was subjected to two major operation
on "11/18/13). Plaintiff also told her he was okay and was doing well waiting
for his trial in court.

95.    Defendant Dinardo, demanded to speak with plaintiff and made sevral
threats if he don't speak with her, including placing him on Suicide watch
and all his paper were going to be removed from him and his property. She
she also stated she don't care that plaintiff don't like Downstate C.F. OMH

The Defendant told plaintiff that if he filed complaint against her Jane    i
Doe No. 5 complaining that he don't received mental health treatment, now
he has to talk to her, or she was going to ordered that he be placed on
suicide watch for refused to speak with her, and he was going to missed his
court trial. Plaintiff told her that any question she wanted to asked him,
he already answered when he arrived at the facility on July 10, 2014, but
the Defendant threatened him and left.

96. The same date couple minutes later, Defendant returned to plaintiff's
cell and demanded to speak with him and stop doing hi s legal work. He again
refused to speak with her, and told her that if he need help from the mental
health, he will be sending a letter, but she continued threatened plaintiff
to placed him on suicide watch, and told him that she spoke with Jane Doe
5, and she ordered her to talk to plaintiff, so she made several threats if
plaintiff don't talk to her she stated, **"if continued refusing to speak with
me I going to placed you on suicide watch and removed all your clothes and
property until you talk to me, and you going to talk to me one way or other
this is what happened when you filed grievances and complaint".** Plaitnff
told her that the reason he filed grievances was because when he need care
and treatment, they denied him and he almost died, so she left.

97.     Couple minutes later on the same date, the Defendant returned
with the Deputy Superintendent of Security, who was doing the round in SHU,
she asked plaintiff again to speak with her and plaintiff again refuse, and
told her that he was busy with his trial and was his right to denied care
or treatment and she cannot force him to speak with her, but she stated that
if he complained against her supervisor and co-worker(Jane Doe %, and Smith)
she was going to forced him to speak with her, plaintiff told her that this
was retalition, harassment, for filing grievances, then the Deputy told
plaintiff that he don't force him to speak with her because this is plaitniff

right to refused treatment and nobody can forced him to received mental treatment if he was not presented any suicide though or danger to himself or other, but she was doing her job and he want not part in this conversation, then plaintiff asked the deputy superintendent of security and the defendant if they forced plaintiff to speak with him?, the defendant stated "yes", then ]plaintiff put then on noticed that this was against his will to speak with her, and if speak with her was because she threatened plaintiff and he was in court at that time and wanted to go to court, plaintiff asked her what she wanted to speak with plaintiff, then the defendant asked plaintiff the same question the sergeant asked plaintiff upon his arrival, one question, "mr Quezada, you feel suicide?, plaintiff answered **"NO"** then the defendant left without asked plaintiff any other question. This harassment and retaliation by the defendant Dinardo, and Jane Doe, including Smith were done to deprive plaintiff of his legal work and retaliated against him for filing complaint and grievances, inviolation of the **'Bill of Right"** and plaintiff constitutional rights. See Exhibit (**AA**) Grievance DSR-13,034-14

98.    On July 13, 2014 plaitniff filed another complaint with Defendant Jane Doe No. 5 Mental Health Unit Chief, against Defendant Dinardo for her harassment, retaliation and forced plaintiff to speak with her under the threats to removed plaintiff's clothes and placed him on suicide watch, including deprived him with his legal papers and court documents while he was in trial and was produced for this purpose. The defendant Jane Doe No 5 never responded plaintiff's complaint. See Exhibit (**BB** ), complaint dated 7/13/14.

99.    OnJuly 18, 2014 plaintiff informed the block officer that he is Jews and he would like to received his kosher food for breakfast and for lunch while he was on transit and in the transportation to be returned to his owning facility, plaintiff also informed the supervisor and Defendant John Doe No 1 before he left the facility. They assure plaintiff that they were going to get his kosher. When the supervisor called plaintiff names he told

the supervisor that he didn't eat breakfast and he would like to received
the breakfast and his kosher for lunch, but they refused to provided plaintiff
with the breakfast and told plaintiff that he will be provided with the luch
while in the rest area.

100.    Upon plaintiff arrived at the rest area "Elmira Correctional Facility"
when the food were served to the inmates on transferred, plaintiff requested
his kosher meal, but the sergeant told plaintiff that there was no kosher food
for him, and the next time to informed the supervisor early. Plaintiff objected
and informed the officer and supervisor that he notified the sergeant before
leaving the facility, so plaintiff was denied food since 5:00 a.m. to 4:45 p.m.
and this was not the first time, every time plaintiff was produced to court
he was denied his religious meal (kosher) more than twenty times (20), which
is clear violation of plaintiff's constitutional rights, plaintiff always
sent a letter to the draft supervisor and informed him that he is kosher and
he would like to received his kosher food while in transit according with
DOCCS Directive and Policies, but most of the time the defendants supervisor
John Doe N.1 ,and 2. stated to plaintiff "we don't gave kosher food in the
morning or during transportation, or sometimes they just stated that they
forgot the kosher meal.

101.    Defendants Perez, John Doe #1 and John Doe #2, had an illegal
policy to denied plaintiff breakfast while in transit or when going to court
and provide plaintiff and other inmates two cup of cereal and two milk, all
regular food contrary to plaintiff religious belief dietary consideration.
Also they had illegal policy to denied plaintiff or other inmates religious
meal while in the transportation, they provide plaintiff and other inmates
wit the same luch, and this was no one date situation, even though they are
well aware that plaintiff travel a a lot because the case he have in the
city courts.

102.   The Defendants knowingly denied plaintiff his kosher meal to avoid the work in making other meal for inmates in transit in violation of their own DOCCS policy and Directive 4202(XVI) that reads:

> DIETARY CONSIDERATIONS: Inmates may refrain from eating those food items served to the general population whcih are contrary to their religious beliefs. The Department offers a Kosher Diet as alternative religious meal option for multiple religions. This menu shall be provide only after verification of the religious  needs for the alternate diet by the Director of MFVS and the Assistant Commissioner for Health Services. Aditionaly, any newly arriving inmate(s) or in "TRANSIT STATUS" inmate(s) claiming the need for kosher Diet or a Department approved religious  holiday menu consideration forhis or her faith group shall received the meal if the religion record has been approved to receive that diet/meal.". If it is unknown wheter the religion of record requires the Kosher Diet/Holiday meal, temporay approval shall be given with an official request for the meal being forwarded tot the DSP simultaneously. The request must be made using Form #4202D1. "Request for Religious Meals Aknowledg-ment and Consent Form. The DSP will render a decision  withtin two weks . Once the inmate has been approved to have the religious diet or meals, he or she  will be responsible for "adhering" to all established guidelines. "Anyone found not to be in compliance may be subject to removal from the religious diet/menu program Violations will be documented and sanctions will be imposed in accordance with established policy using FORM #4202D. "Religious Meal plan Counseling". Form #4202D1 must be used to request any of the religious meals and is not valid until all required parties have signed the consent form: the form only needs to be signed once. The only time a Kosheer Diet approved individual may eat  a non-Kosher Diet meal is when there is an MC designate holiday for his or her religion of record and that meal is not off the Kosher Diet menu. In these cases, the individual must choose either the holy day meal or the Kosher  Diet, but can not have both. If an inmate is not approved for the religious meals., he or she should be advised as well as informed that the Department does offer a meatless alternative menu that is available daily to all inmates. The form may be updated periodically. Any inmate who is apporved for a religious menu will be expected to fully comply with the most current revision The Superintendent will determine the best way to notify participants of these changes.

103.   The defendants were well aware of this Directives and Policy and willfully denied plaintiff his religious meal. base on unwritten policy that violated plaintifs constitutional right. Plaintiff filed grievance in this matter, See exhibit ( **CC** ) Grieevance DSR-29163-14, and Exhibit ( **DD** ) Directive 4202.

104.     On July 22, 2014, Defendant Watson sent plaintiff a memorandum returning plaintiff's grievance against the Defendant Jane Doe #5. Per Watson, grievance against Mental Health Defendant are not appealable to C.O.R.C. But this grievance was against both Defendant  Dinardo and the Deputy Superintendent of Security, which was not part of the mental health unit. Plaintiff sent a letter to Watson asking her to filed this grievance and other grievances she refused in retaliation for plaintiff's complaint against her. Plaintiff appeal this grievance to CORC. She also stated that "if plaintiff wanted to filed a grievance against the Deputy Superintendent of Security, he should filed a "separate" grievance and retuned plaintiff's appeal. See exhibit (**EE** ) letter dated 7/22/14 and appeal/ See exhibit(**FF** ) Plaintiff letter dated 7/20/14.

105.     On September 26, 2014, plaintiff filed another complaint with the Director of Central New York Psychiatrist Center against Defendant Dinardo and Jane Doe #5. Because both Defendants continuing the common plan of unconstitutional behavior in that callously and deliberately, retaliated against the plaintiff for filing grievances and complaints. See Exhibit ( **GG** ) Letter dated 9/26/14, and response dated 10/8/14.

106.     On October 9, 2014, plaintiff arrived at Downstate C.F. Plaintiff was escorted to the special housing unit and when he arrived at the SHU and while was pat frisk by Defendant "Lashey", he asked plaintiff, "Mr Quezada why you filed claim against the sergeant stating that they destroyed you property, you know that you can loss more property? you have to stopped filing grievances and claims against the officers and sergeant, because you always is here and if they are going to get upset and you going to have more problem, they already told me about all your grievances.

107.     Plaintiff asked Defendant "Lashey" why he was telling him that, because this is his right to filed complaint and claim if they destroyed his property, so "Lashey" told plaintiff, "yes but you also filed grievance

against my "co-worker Ms Lordo", and you know she is the A-Officer here and work almost all the times, so you going to have problem.

108.   On October 14, 2014, plaintiff returned from court with his legal papers and his kosher back that the draft officer provided plaintiff for his dinner. After plaintiff was pat frsiked on his cell by Defendant "Lashey" plaintiff asked for his papers and his Kosher bag, the Defendant response was "don't asked me, asked the draft officer". So plaintiff stated to the Defendants, that he was talking about his "Court's Bag" that he brought with him to the unit, then Lashey reply, "you know what I told you before, you know better than that", I told you about the grievances situation and you keep filing grievances and complaint, plaintiff asked the Defendant, what he was talking about, and he had right to filed grievance against the staff. The Defendant then left without returned plaintiff property.

109.   Couple minutes later, Lashey stopped in plaintiff's cell and told him "you not going to get that property, you still talking shit and I already told you to stopped filing grievances. Plaintiff told the Defendant that if he continued retaliating against him for filing grievance and denied plaintiff his legal documents, he will be filing another claim for the destruction of his property, plaintiff also told him that he need to sent letters and motion to the courts including provide his attorney some papers for the upcoming Civil Trial scheduled for one weeks, but the Defendant told plaintiff that he don't care and he not going to bring plaintiff's legal papers nor the food, then left. Couple minutes later he returned to plaintiff cell with his medication but not the property, plaintiff asked for the papers and Defendant stated "keep talking shit and you going to loss more property then left.

110. The same night plaintiff spoke with another officer about his the property and his food because he didn't eat that date, so the officer told plaintiff that Defendant "Lashey" was upset because plaintiff filed griavces and asked for his property couple of times, plaintiff told the officer that he just returned from Court and had an upcoming trial, including legal visit and he need his legal papers to provide his attorney with copy, but the officer told plaintiff that he don't wanted to be in the middle of plaintiff and Defendant "Lashey".

111. Plaintiff was waiting for his dinner and legal papers until around 1:00 a.m., but the Defendant never brought the papers or his food. He went to sleep with pain on his stomach due to the lack of food and that fact the he take a lot of medication for his "high blood pressure, over active tyroid, and mental health issues and stomach problem. The next morning plaintiff discovered the food on the floor, the officer threw the food on the floor while plaintiff was sleeping without notifying the plaintiff, the food was already bad. Plaintiff asked for his legal papers but nobody found the papers according with the morning officer he look all over the block but he didn't find any of plaintiff's paper work. All in retaliation for filing grievances and claims, in violation of plaintiff's constitutional rights. He filed Grievances in this matter. See Exhibit ( HH) Grievance DSR-13136-14.

112. On October 15, 2014, plaintiff was produced to court for his family case and trial, while in court his attorney "GavinWalcott" notified plaintiff that the Civil trial in another case was scheduled for 10/27/14. Plaintiff informed his attorney that he was not ready or prepared for this trial because most of the papers he needed were in his facility (Five Points C.F), and he needed those documents and other papers. Also he informed his attorney that the Defendants destroyed some of his papers and he don't know how long he will be at Downstate C.F, or city jail. Plaintiff's attorney subjected that the plaintiff returned to his facility and retrieved the papers he need for his

cases and the attorney will be filed another order to produced plaintiff the following week.

113. On October 17, 2014, plaintiff returned to Five Points Correctional Facility to retrieved the documents he need for his cases including the trial minutes, depositions, verified complaint, motions filed in  courts in that case, and other documents for other cases in criminal court and Federal Courts , but most important he need the documents for the upcoming trial because this case is from 1999,and he need to refresh his memory about the issues and prior trials and depositions, and due to his medical problem and mental health issues it is difficulty for plaintiff to remember a lot of detail in this case, or in his prior trial.

114. Plaintiff also retrieve papers for the case in the Northern District Court (13 CV 885), and for other case against the Downstate C.F. Defendants, papers for his parole and Civil case in this Southern District Court and other settlement agreement in other case out of courts.

115. On October 23, 2014, plaintiff was transferred back to Downstate Correctional Facility for his Civil Trial in Brooklyn Supreme Court(Quezada V. New York City Department **(23559/2000)**  ). Upon arrival at the facility plaintiff asked the Defendant John Doe2, for his property and legal papers, he explained Defendant that he need the legal apers for his upcoming trial and because this case is from 1999, and he need to refresh his memory but the most important was his "trial transcripts", deposition, but the Defendant denied plaintiff's request because he was busy. Plaintiff tried to explained the Defendant that his trial was scheduled to started on 10/27/14, but the Defendant told plaintiff he was busy.

116. On October 25, 2014, plaintiff requested his legal papers and told the block officer that he need the legal papers for his trial and to be ready the block officer told him that he called Defendant John Doe 1 and 2, inquiry about the papers but nobody sent the legal paper to the SHU.

117.   On October 26, 2014, again plaintiff asked the the block officer about his legal papers and property because he needed for his trial and he was not able to use his cosmetic during the shower days or when he start his trial. plaintiff didn't have his Deodorant, lotion, shower shoes, com, T. Shirts, or underwear and the Defendants told plaintiff that nothing they can't do for him because Defendant John Doe#1, and 2, are the persons in charge for plaintiff's property, plaintiff asked for clothes (state clothes) and his request was also denied.

118.  On October 27, 2014the block officer came to plaintiff's cell and escorted him around 4:30 a.m. for court, plaintiff asked the officer for his Kosher food(breakfast), but the officer stated to plaintiff that **"there is not Kosher food in the morning for inmates going to court, that every body eat the same food which was two boile eggs and one juice or two cup of cereal".** The officer further stated that **"there is no Kosher foood for inmates in transit"** plaintiff told the officer that he was going to be in court all days and he need to eat something because his medication and medical problem, but his request was denied. Plaintiff was escorted to the draft room and upon arrived he asked for his property, then officer (Soto) draft room officer stated that he was going to look for plaintiff's property, then half hours later plaintiff asked again and she told plaintiff that she found the court bags(Note court bags is provide by the facility with one set of gray set of courts clothes and bell only to be use for court), she stated that she found plaintiff's bags, but the rikers island officer who was waiting for plaintiff was already there and plaintiff didn't have time for take any legal papers to the court, he left without eat and without papers.

119.   Plaintiff was in court all day and upon returned from court to Downstate Correctional Facility he asked the Defendant John Doe#2 for his property and shoer, but plaintiff request was denied. Then when he was escorte

to the SHU, plaintiff asked Defendant "Azzinaro" for his property and shower, but his request was denied, plaintiff was denied his property, food and shower that date by both Defendants John Doe 1, and Azzinaro".

120.   On October 28, 2014, around 4"00 a.m. plaintiff was waiting for the escort to be taken to draft for his court trial, he asked the Defnedant Lashey for his Kosher food and Defendant told plaintiff that he don't have court, plaintiff explained to the Defendant that he is in trial, and he need his Kosher food, but his request was denied, plaintiff asked for his legal bags and also was denied, then couple minutes later the escort sergeant came to get plaintiff for court without eat, when he arrived at the draft room the officers from the city were already waiting for plaintiff and they told plaintiff that they notified the defendants about plaintiffs court but they told the offciers that plaintiff filed too much complaint and they don't wanted to see plaintiff in the draft room waiting for the transportation, plaintiff never received his Kosher food and was produce to court without eat and without hsi property.

121.   While in trial on the stand testifying on his behalf, he notified the judge of this situation and the lack of food, plaintiff was experiencing stomach pain, and other simtompts, the the **Judge stopped the trial and ordered that plaintiff be provide food"** plaintiff was also not able to eat the food which was **"one Sheeze Sandwishes"** because it was not Kosher, he drink a milk and returned to the stand without eat and without his legal papers until around 7:00 p.m. which make his case more difficult and complicate due to the facts that this case in from 1999, and without reviewing his papers he only rely on someminor facts of the incident, while the other parties including witnesses whose testified against the plaintiff reviewing some documents, including prior testimony, deposition and records, Defendants deprived plaintiff of his legal papers and the opportunity to use then in his trial.

122.    On the same date plaintiff returned to the facility around
9:00 p.m. He asked for his property and legal papers and for shower,
supplies to do some legal paper but his request was denied according
wit the defendants the supplies are done in the morning, plaintiff explained
that in the morning he is in trial and is not able to made the request, but
the defendants maliciously and with intention to deprived him of access to the
court denied plaintiff request and showers.

123.    On October 29, 2014, the block officer came and get plaintiff
late for court after plaintiff explained to him again that he was intrial
and need his Kosher food, but the Defendant stated that plaintiff that he
don't have court and for that reason he didn't provide him with food. Upon
arrived at the draft room plaintiff asked for his property, but they denied
his request again stating that upon he returned from court, so he was
produced to court without his pares, and the same date plaintiff took the
stand in court for couple of hours, and he only remember some of the facts
in his case, that date he returned to the facility around 10:45 p.m. and was
denied shower, food and suplies to do his legal work.

124.    On October 30, 2014, the block officer again told plaintiff that
Defendant John Doe #1 and #2, didn't sent plaintiff's property and stated
that they don't know were is the property, so plaintiff's request for his
legal papers was denied.

125.    On October 31, 2014, the block officer told plaintiff that the
Defendant John Doe # 4(Food Service Administrator) didn't sent plaintiffs
Kosher Food, also plaintiff was denied his legal papers, he was produced to
court without eat and without his legal paper, plaintiff took the stand
again at his trial and rely only of some issues because he was unable to
refresh his memory with the legal papers. Upon he returned from court
approximately 8:45 p.m. plaintiff asked for his property, shower, supplies
again his request was denied, the defendants told plaintiff that the supplies

(45)

are done in the morning, plaintiff again explained the defendants that he
is in trial all day and he wanted to notified other court about this matter
and the fact that he was not able to write any letter, his cases can be
dismissed, but the defendants John Doe #1 and #2, denied plaintiff's request
then plaintiff asked defendants Azzinaro, Lashey and Lordo, but they denied
plaintiff's request, in violation of his right and access to the courts.

126. On November 1, 2014 which was saturday, plaintiff asked the block
officer for shower, property, and supplies including cleaning suplies to
clean his cell because he was in trial all week. Plaintiff also asked for
cleaning clothes, he also explained the officer that because the trial
situation he was not able to take shower and he has **BAD SMELL**, the officer
told plaintiff that he don't know about the property or legal papers, and
denied plaintiff's other request because was Saturday. Around 2:00 p.m.
plaintiff saw the draft room officer who brought some property for other
inmate , plaintiff asked for his property the officer stated that he don't
know about plaintiff's property, so plaintiff again was denied shower,
supplies and his legal papers.

127.    On November 2, 2014, plaintiff requested his property, shower,
legal supplies and cleaning supplies, to the defendants but his request was
denied again even thought they were aware plaintiff was in trial and by the
time he returned from court was late and he need the shower and legal supplies
including his property, but the Defendants Mailiciously and with inetention
to retaliated against the plaintiff denied him supplies, shower and his
property. Including his Kosher meal in the morning for breakfast.

128.    On Novemebr 3, 3014 The block officer denied plaintiff his Kosher
before he was escorted to the draft room for court, plaintiff again asked
the Defendant John Doe 1, for his property because he wanted to prepared
himself due to the fact that he was in trial and took the stand for couple
days already, and he don't wanted to loss his property like in the 2013

but the block officer told plaintiff that he don't know about the property
or his legal papers, then he asked plaintiff "why you filed claim and
grievances for the other property you lose in 2013?, he further stated to
plaintiff **"this is the reason you never going to get your property"** Plaintiff
asked the officer what he means by that?, the officer stated, **The draft
sergeant which was John Doe #1 and #2,are mad , and they don't like inmates
to who complaining a lot or filed claims for loss of property, you are lucky
if you received your property before you finished the trial"** Plaintiff asked
the officer that he wanted to speak with the defendant John Doe #1, but the
Defendant refused to speak with plaintiff. So he was produce to court without
his legal paper and without eat food for breakfast.

129.    Plaintiff returned from court around 9:45 p.m., he again asked
for his property, then the defendant John Doe #2 stated to plaintiff that
he property was sent to the special housing unit on 10/29/14, plaintiff told
him that he never received the property and the block officer and Defendanst
Lordo, Lashey and Azzinaro, stated that the property was not in SHU, so
someone was holding his property in purpose. Plaintiff asked for shower
and legal supplies, including clean clothes, but his request was denied by
the defendant John Doe #2 and Lashey.

130.    On October 4, 2014 plaintiff didn't have court because the
holy days, he place his name for shower, property, cleaning supplies. He
explained the officer the situations and the fact that he was in trial
and was not able to take shower for more than five dates, plaintiff asked the
officer to help him with the property, the officer made a phone calls and
returned half hours later and told plaintiff that the Defendants John Doe
#1, told him that plaintiff received his property on 10/27/14. Plaintiff
told the officer that he never received his property, and asked the officer
to investigate this matter because someone was holding his property or
destroyed the property in retaliation for the claim plaintiff filed and

grievance and claims against the defendants in 2013, so the block officer
left and returned half hour later with the property subsequent to plaintiff
trial which had conclude the next date (11/5/14). See exhibit( II )SHU in
cell property form issues by the officer. Plaintiff filed grievance with the
defendant Watson against the defendants for this violation, but the defendant
refused to filed the grievance in retaliation for plaintiff's complaint
against her. Watson stated on her memo that "plaintiff has several different
complaints in his grievance even though the complaint was correct she refused
to processed. See exhibit( JJ )complaint and memo dated 11/12/14

131.    On the same date (11/4/13) Defendant Lashey denied plaintiff his
Kosher meal and "alternative for tuna". Plaintiff don't eat tuna due to
medical problem, also they tamper with the plaintiff's food change the items
on the tray, plaintiff requested his shower but the defendants also refused
to provided him the shower, or clean clothes telling plaintiff that he need to
request that in the morning.

132.    On November 8, 2014 the defendant the defendant Lashey denied
plaintiff his Kosher meal in retaliation for filing grievances, he also
in common plan with other defendant(Lordo and Azzinaro) tamper with the
food and continuing changing items from the tray, telling plaintiff that
he is not allergy to tuna even though they are aware of the doctor order
the defendant at one time smack the tray from the plaintiff's floor
in retaliation because plaintiff's complained to the supervisor or filed
grievances. This was no the first time the defendant denied plaintiff his
Kosher meal, for example on 11/17/14 he denied plaintiff his kosher upon
he returned from the court, and shower plaintiff filed grievace DSR-13154-14
See exhibit ( KK )Grievance DSR-13154-14

133.   On Several occasion plaintiff send multiples letter to the
Defendants requesting his property but they refused to returned plaintiff
property in retaliation.

136.   On November 26, 2014 plaintiff sent the appeals to Defendant Watson on grievance (DSR-13148-14; DSR-13153-14; DSR-13136-14 and DSR-13139 14. The defendant continuing to refused to filed plaintiff's grievances and appeals in retaliation and in common plan to stopped plaintiff from exhausted his grievances and cover up staff misconduct. See exhibit ( LL, ) Letter 11/2/14; 11/6/14 and 11/26/14

137.   On Novemebr 27, 2014 plaintiff filed grievance FPT-29691-14 at Five points Correctional Facility against the defendant Watson for retaliation, harassment and refused to filed his grievances and appeal. The defendant while conducting the round in the special housing unit on 11/7/14 plaintiff informed the defendant that he filed several grievances against the defendants John Doe #1, and 2, including against Defendant Perez and John Doe #4 and he wanted to know why his grievances were not filed, the defendant stated to plaintiff that "she not going to file or processed plaintiff's grevances because he filed grievances and complaint against also and because he just wanted filed acivil suit, she also told him in confidence that she being ordered to precluded plaintiff from exhausted his remedies because is the only way plaintiff can be stopped from filing claim and suits, but she could not stated who's was issuing said orders, and refused to take plaintif's griecvances" for this reason plaintiff filed this grievance while in his facility against the Defendant Watson for the retaliation. See exhibit ( MM )Grievance DSR-29691-14.

138.   This was no the firs time plaintiff had to filed grievance against Defendant Watson and other grievances against staff in other facility because she refused to filed the grievances at her facility in retaliation for plaintiff's complaint. For example plaintiff has to filed another grievance against the defendants John Doe #1, John Doe #2 and Ada Perez, in Five points because watson refused to filed this grievance at her facility. See exhibit ( NN  )grievance FPT- 29643-14.

139. On February 19, 2015 plaintiff filed grievance DSR-13257-15 against Defendant John Doe #4, for denied plaintiff his Kosher food in retaliation for filing grievances and for the unconstitutional policies authorized and maintained by the defendant John Doe #4; Ada Perez, and John Doe #1 & 2 to denied plaintiff his religious food Kosher while in transit or while schedule for court, the plaintiff have suffered and continue suffer including medical problem for this denial. The defendant also denied plaintiff his Matzo food during the "sabbath" stating that plaintiff was in transit and they don't provide Matzo for inmate in transit.

140. On March plaintiff filed another grievance against the Defendant John Doe #4 ; Perez and John Doe #1 & 2 for the ongoing denial of his Kosher religious food and while in the "Sabbath". The defendants unconstitutional policies and custom by authorized and maintained by the defendants, in which plaintiff have suffered and continued to suffer medical paproblem base on this violation of his right and that violate the First and Fourteenth Eighth and Fourteenth Amendment protection against cruel and unusual punishment. See exhibit (OO) Grievance DSR-13257-14 and Exhibit (PP) DSR-13258-14.

## CONCLUSION

141. The unconstitutional acts as alleged above have been continucus. thus, as the proceeding progress additional allegations against the defendants may have to supplemented via an addendum.

## VI. INJURIES

Plaintiff's injuries and received medical treatment or lack thereof are briefly described in paragraphs 1 thru   above and supported via the attached verified exhibits.

## VII. EXHAUSTION OF ADMINISTRATIVE REMEDIES:

For the sake of brevity plaintiff stipulates that he exhausted all his administrative remedies to C.O.R.C. (highest level within the DOCCS),

for each grievance listed, mentioned or attached as an exhibit to the complaint. For the most part all grievances were denied or granted in part, or overturned via Defendants after obtaining a favorable decision. It must also be note that all harassment/staff abuse/misconduct are listed as code 49. However, DOCCS records convincingly demonstrate that for more than 20 years, as per DOCCS policy, no code 49 grievance has ever been substantiate in order to deny liability in subsequent proceeding.

## VIII. PRAYER FOR RELIEF

### FOR A FIRST CAUSE OF ACTION

a). Plaintiff Jose Quezada, repeats, reiterate, and realleges each and every allegation contained in parts I thru VIII with the same force and effect as if fully set forth herein.

b). all of the aforementioned acts of the defendants, their agents, servants, and employees were carried out under color of law.

c). All the aforementioned acts deprived plaintiff of the rights, privileges and immunities guaranteed to people in the Unite States by the First, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States of America and in violation of 42 U.S.C. §1983, §§12131(1)(A) 12101 (a)(8); 28 CFR §35.130(b); Section 54 of the Rehabilitation Act of 1973; and Title II of the American with Disabilities Act of 1990.

d). Defendants collectively and individually, while acting under color of state law engaged in conduct which constituted a custom, usage, practice, procedure, or rule his/her respective authority, which is forbidden by the constitution of the United States.

e). The acts complained of deprived the plaintiff JOSE QUEZADA, of his rights:

1. To be free from harassment;

2. To be free from Cruel and Unusual Punishment;

3. To Equal Protection of Laws;

4. To be free from Deliberate Indifference to plaintiff's Serious Mental and Medical Condition;

5. To be free to file Grievances through government, without fear of retaliation;

6. To be free from Torture;

7. To be free from Assault and Battery;

8. To have proper Mental and Medical Care to address plaintiffs Serious Medical and Mental needs;

9. To have proper Mental and Medical Care for serious Medical Emergencies;

10. To be afforded Reasonable Accommodation for plaintiff's Disability pursuant to American with Disabilities Act ADA, and Rehabilitation Act "RA".

11. To be afforded proper safety and protection;

12. To enjoy his First Amendment Rights without fear of Retaliation;

13. To be free from Summary Punishment through a denial of Mental and Medical Care due to filing Grievances or Complaint to Address the conduct of these defendants;

14. To be free from Pain and Suffering, Past, Present, and Future Due to the acts committed by the Defendants failure to provided adequate Mental Health and Medical care/Treatment;

**WHEREFORE,** Plaintiff respectfully prays this court to enter a judgment granting plaintiff the following:

a). Declare that Defendants acts and omissions violate the plaintiff's rights under the First, Eighth and Fourteenth Amendments to the United States Constitution and that these acts and omissions continue to cause ongoing violations of these rights;

b). Enter permanent injunctive relief, in the form of policies, procedures, training, supervision and monitoring, requiring defendants Supervisors (Anthony J. Annucci) to end the ongoing violations of these rights;

c). Enter permanent injunctive relief prohibiting the illegal policy at Downstate Correctional Facility to denied the plaintiff's Kosher Foodas part of his religious belief, while in transit, and suspended the defendants from enforced the

d).  Enter a permanent injunctive relief, enjoining the defendants at Downstate Correctional Facility to provide plaintiff Reasonable Accommodations when produce to Downstate Correctional Facility to carry out his legal bags and property to the housing unit.

f).  Enter a permanent injunctive relief, enjoining the Defendants at Downstate Correctional Facility to provide plaintiff with his religious food (Kosher) while in the transportation to be transfer to a different facility.

g).  Enter a permanent injunctive relief, enjoining the defendants at Downstate Correctional Facility to provide plaintiff with shower, clean clothes, religious food kosher, and cleaning supplies while plaintiff are in trial and is not in the facility due to his trial.

h).  By reason of  the aforesaid, plaintiff seeks compensatory damages in the amount of (4,000,000.00) Four Million Dollars and zero cents.

I).  Plaintiff seeks punitive damages jointly and separately against the Defendants in the amount of ($300,000) Three Hundred Thousand Dollars.

J).  A Jury Trial on all issues triable by jury.

K).  An award of reasonable counsel fees, plaintiff's cost and disbursement in this law suit; and

L).  Any additional relief this Court deems, just, proper and equitable.

**I declare under penalty of perjury that the foregoing is true and correct.**

Date: _22_ day of _NOV_ 2015

Respectfully Submitted,

JOSE QUEZADA, 04-A-3690
Pro se Plaintiff
Five Points Correctional Facility
P.O. Box 119
Romulus, New York. 14541

Sworn to before me on this _22_

day of _November_ 2015

Steven Shaw
01SH5319975
Notary Public, State of New York
Qualified in Cayuga County
Commission Expires on 3/17/20__

NOTARY PUBLIC

I Declare under penalty of perjury that on _11/27/15_ day of _____, 2015, I delivering this complaint to prison authorities to be mailed to the Pro Se Office of the United States District Court for the Southern District of New York, by placing in the mailbox at Five Points C.F designate for that purpose.

## VERIFICATION

I Jose Quezada, 04-A-3690, have read the foregoing and hereby verify that the matter alleged therein are true, except as to matters alleged on information and belief and, as to those, I believe them to be true. I certified under penalty of perjury that the foregoing is true and correct.

Respectfully Submitted

_____
JOSE QUEZADA, 04-A-3690
Pro se Plaintiff
Five Points Correctional Facility
P.O. Box 119
Romulus, New York 14541

Sworn to before me this _22_

Day of _November_ , 2015

_____
NOTARY PUBLIC

Steven M Shaw
01SH6299077
Notary Public, State of New York
Qualified in Cayuga County
Commision Expires on 3/17/2018

# EXHIBIT

